IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAHYA SALEEM BEY,

    Plaintiff,

v.

CITI HEALTH CARD,

    Defendant.

CIVIL ACTION
NO. 15-6533

## OPINION

**Slomsky, J.**                                                                                                                                          **July 6, 2017**

### I. INTRODUCTION

Plaintiff Yahya Saleem Bey initiated this action against Defendant Citibank, N.A. ("Citibank") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq.[1] (Doc. No. 3.) Bey alleges that Citibank violated provisions of the TCPA when it auto-dialed his cellphone in attempts to collect an outstanding debt on Plaintiff's Citi Health credit card, which was issued by Citibank. (Id. at ¶¶ 12-20.) Defendant moved to compel arbitration of this dispute pursuant to the arbitration clause contained in the Card Agreement that the parties entered into when Bey opened the credit card account. (Doc. No. 11.) For reasons that follow, this Court will grant Defendant's Motion (Doc. No. 11).

### II. BACKGROUND

On April 21, 2015, Plaintiff Yahya Saleem Bey applied for and obtained a Citi Health credit card account at Champion Dentistry, Inc., located at 1170 N. 63rd Street, Philadelphia Pennsylvania. (Doc. No. 11-2 at ¶ 7, Doc. No. 11-3 at 2.)

---

[1] Defendant Citibank, N.A. was incorrectly identified in the Complaint as "Citi Health Card." (Doc. No. 11-1 at 8.)

1

To obtain the credit card, Bey signed a Card Agreement, which included an agreement to arbitrate all disputes related to the account. (Doc. No. 11-3 at 10.) The Card Agreement reads, in pertinent part:

### ARBITRATION
*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.*

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### Claims Covered
**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assigned, or trustee in bankruptcy.

* * *

### How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. Any arbitration hearing that you attended will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. . . .

(Id. at 10-11.)

After opening the credit card, Bey used the account to make a purchase in the amount of $3,898. (Doc. No. 11-2 at ¶ 9, Doc. No. 11-3 at 17.) Bey presumably failed to make regular payments on the account. Thereafter, Bey began receiving calls from a Citibank auto-dialer attempting to collect the outstanding balance on his account. (Doc. No. 3 at ¶¶ 15-20.) On October 20, 2015, Bey mailed a letter to Defendant revoking any prior consent to receive collection calls. (Id. at ¶ 14.) However, Bey continued to receive these calls. (Id. at ¶¶ 15-20.)

On December 15, 2015, Plaintiff filed a Complaint against Citibank alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., in connection with the continued collection calls. (Doc. No. 3.) Upon receiving service of the Complaint, Defendant filed a Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 11.) On January 24, 2017, Plaintiff filed a Response in Opposition to the Motion to Compel and Stay Proceedings. (Doc. No. 12.) On February 1, 2017, Defendant filed a Reply. (Doc. No. 13.) Thereafter, Plaintiff filed a Sur-reply. (Doc. No. 14.) Additionally, on March 29, 2017, Plaintiff filed a Motion for Summary Judgment.[2] (Doc. No. 15.) On April 13, 2017, Defendant filed a Response in Opposition to Plaintiff's Motion for Summary Judgment. (Doc. No. 17.)

---

[2] On March 29, 2017, Plaintiff filed a Motion for Summary Judgment. (Doc. No. 15.) On April 13, 2017, Defendant filed a Response in Opposition to the Motion. (Doc. No. 17.) In the

## III. STANDARD OF REVIEW

The Motion to Compel Arbitration filed in this case will be considered under the standard for summary judgment in Federal Rule of Civil Procedure 56(c).[3] Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009). A court will compel arbitration only when there

---

Motion for Summary Judgment, Plaintiff contends that summary judgment should be granted in his favor as to his TCPA claims because Defendant "admitted that there are no genuine issues of fact regarding plaintiffs [sic] complaint in the case at bar." (Id. at 1.) This statement, however, incorrectly summarizes Defendant's position. In its Reply brief, Defendant argues that there is no genuine issue of fact concerning the formation of the agreement to arbitrate, and therefore the Court should compel arbitration of this matter. (Doc. No. 13 at 4.) Defendant does not argue, as Plaintiff contends, that no genuine issues of fact exist regarding Plaintiff's TCPA claims. At this stage of the litigation, the Court is not considering the merits of the TCPA claims. Plaintiff's Motion for Summary Judgment is premature. No discovery has been taken in this case. Rather, the only pertinent issue is whether the dispute should be sent to arbitration. For these reasons, Plaintiff's Motion for Summary Judgment in regard to liability for alleged violations of the TCPA will be denied.

[3] A district court must initially decide whether a motion to compel arbitration should be assessed under the motion to dismiss standard of Fed. R. Civ. P. 12(b)(6) or the summary judgment standard expressed in Fed. R. Civ. P. 56. Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard is appropriate "when it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 771 (3d Cir. 2013). In such cases, the court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents." Id. at 772 (citation omitted).

Conversely, the 12(b)(6) standard is inappropriate where: (1) the motion to compel arbitration "does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. at 774 (citation omitted). In those cases, limited discovery may be taken, and the summary judgment standard under Fed. R. Civ. P. 56 will be used to analyze the motion to compel arbitration. Id.

Here, it is unclear from the Complaint that the parties entered into an agreement to arbitrate, as there is no contract attached to the Complaint as an exhibit. Only with the filing of the Motion to Compel Arbitration was the Court made aware that agreement to arbitrate existed between the parties. Therefore, it is appropriate to analyze the Motion to Compel Arbitration under the summary judgment standard of Fed. R. Civ. P. 56.

is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. Id. The court must consider all evidence provided by the party opposing arbitration and draw all reasonable inferences in that party's favor. Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 541 (E.D. Pa. 2006).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., "establishes a strong federal policy in favor of compelling arbitration over litigation." Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000). Section 2 is the primary substantive provision of the FAA, declaring that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2).

Before compelling arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). To determine whether a valid arbitration agreement exists, courts look to ordinary state-law principles of contract formation. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [Section] 2." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

## IV. ANALYSIS

Defendant argues that arbitration should be compelled in this case because there is a valid agreement to arbitrate in the Card Agreement and the dispute falls within the scope of that agreement. (Doc. No. 11-1 at 14-20.) Plaintiff contests the Motion to Compel Arbitration, preferring to litigate the allegations of TCPA violations in this Court. For reasons that follow, Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. No. 11) will be granted.

### A. A Valid Agreement to Arbitrate Exists in the Card Agreement

Defendant first argues that a valid agreement to arbitrate is included in the Card Agreement, which Plaintiff read, signed, and entered into when obtaining the Citi Health credit card. (Doc. No. 11-1 at 9.) A court must initially inquire into whether a valid agreement to arbitrate exists before compelling arbitration. Trippe Manufacturing Co., 401 F.3d at 532. Courts look to ordinary state law principles of contract formation to make this determination. Alexander, 341 F.3d at 264.

The Card Agreement at issue here contains a choice-of-law provision, which states that "Federal law and the law of South Dakota, where we are located, govern the terms of and enforcement of the Agreement." (Doc. No. 11-3 at 12.) Therefore, South Dakota state law principles of contract formation apply here.[4]

Under South Dakota law, the elements necessary for contract formation are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration. American Prairie Construction Co. v. Hoich, 594 F.3d 1015, 1023 (8th Cir. 2010) (citing S.D.

---

[4] Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must find which state's laws to apply. Aliments Krispy Kernels, Inc. v. Nichols Farms, 851 F.3d 283, 289 (3d Cir. 2017). It makes this decision using the choice-of-law rules of the forum state. Id. Therefore, since Plaintiff brought this lawsuit in Pennsylvania, the Court applies Pennsylvania choice of law rules to determine whether to apply South Dakota law or the law of another state. Gay v. Creditinform, 511 F.3d 369, 389 (3d Cir. 2007). "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52 (3d Cir. 1994).

Here, the South Dakota choice-of-law provision in the Card Agreement is enforceable for two main reasons. First, South Dakota has a substantial relationship to the parties and the transaction (i.e., Citibank is located in South Dakota). Second, South Dakota law is not contrary to any fundamental public policy of Pennsylvania. See Gay, 511 F.3d at 390 (applying a Virginia choice-of-law provision to the issue of arbitrability where one party was located in Virginia and Virginia law was not contrary to any fundamental public policy of Pennsylvania law). For these reasons, the South Dakota choice-of-law provision in the Card Agreement is enforceable, and South Dakota state-law principles of contract formation will apply here.

Codified Laws § 53-1-2). To form a contract, there must be an objective manifestation of mutual assent. Jacobsen v. Gulbransen, 623 N.W.2d 80, 90 (S.D. 2001). Regarding consumer credit cards, South Dakota defines the use of a credit card as acceptance of a credit card agreement. See S.D. Codified Laws § 54-11-9 (establishing that "[t]he use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer.").

All elements necessary for contract formation are present here. First, Bey and Citibank are both parties capable of contracting. Second, both provided their consent in contracting. Demonstrably, on April 21, 2015, Bey signed the Citi Health Card application to obtain a credit card account. (Doc. No. 11-3 at 2.) The application provided in part that "By signing below, I certify that I have read and agree to the Credit Card Disclosures, Terms and Conditions of the Offer and the Card Agreement, all of which are attached." (Id.) The Card Agreement explicitly stated that it was the contract that governed the account and would apply after the consumer used the account.[5] (Id. at 8.) Moreover, shortly after opening the credit card account, Bey used the credit card to make a purchase in the amount of $3,898. (Doc. No. 11-3 at 17.) Third, there was a lawful object to the contract, that is, a credit card account. And finally, there was consideration. Citibank exchanged a credit line for Bey's promise to pay off charges made to the credit account with interest. Most notably, Bey does not challenge the existence or validity of the Card Agreement. Because all elements of a valid contract are present, a valid agreement to arbitrate existed between Bey and Citibank.

### B. This Dispute Falls Within the Scope of the Arbitration Agreement

Defendant secondly argues that Plaintiff's claims fall within the scope of the arbitration clause in the Card Agreement. (Doc. No. 11-1 at 18.) Once it is determined that a valid

---

[5] The Card Agreement explicitly stated: "This Card Agreement is your contract with us. It governs the use of your card and account. Please read this Agreement carefully. Keep it for your records." (Doc. No. 11-3 at 8.)

arbitration agreement exists, courts must then consider whether the dispute at issue falls within the scope of the arbitration agreement. Trippe Manufacturing Co., 401 F.3d at 532. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986).

In this case, the Card Agreement's arbitration provision covers all claims relating to a consumer's account. It states in relevant part:

> **Claims Covered**
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; . . . .

(Doc. No. 11-3 at 11.) From this language, the Card Agreement establishes that "all claims" relating to a consumer's credit card account, are subject to arbitration. (Id.) Additionally, it expressly covers claims "based on . . . statutory or regulatory provisions." (Id.)

Plaintiff filed this action against Citibank alleging violations of the TCPA. (Doc. No. 3.) Such statutory tort claims are subject to the Card Agreement's arbitration provision. See McCormick v. Citibank, N.A., No. 15-46-JTC, 2016 WL 107911, at *5 (W.D.N.Y. Jan. 8, 2016) ("nothing in the text or legislative history of the TCPA . . . suggest[s] that Congress intended TCPA claims to be non-arbitrable"); see also Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013) (finding that TCPA claims are statutory tort claims, and that such claims may be subject to arbitration). Moreover, Plaintiff does not contest Defendant's assertion

that his claims are within the scope of the arbitration agreement. Therefore, Plaintiff's claims fall within the scope of the valid and enforceable arbitration agreement in this case.

Because there is no genuine issue of material fact that the Card Agreement between Bey and Citibank contained a valid arbitration agreement, and Bey's TCPA claims fall within the scope of this arbitration agreement, Defendant's Motion to Compel Arbitration will be granted.

### C. This Action Will Be Stayed Pending Arbitration

Last, the proceedings will be stayed pending arbitration. Section 3 of the Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. As the United States Court of Appeals for the Third Circuit has explained, Section 3 of the FAA "clearly states . . . that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004) (citation omitted). Citibank has requested a stay, and since this Court has concluded that all of Bey's TCPA claims are subject to arbitration, the case will be stayed pending the completion of the arbitration.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. No. 11) will be granted. An appropriate Order follows.